**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| AMERICAN EMPLOYERS' INSURANCE COMPANY, § § § | |
| Plaintiff, § § | |
| v. § | CIVIL ACTION NO. H-07-03524 |
| § | |
| DYNMCDERMOTT PETROLEUM, OPERATIONS COMPANY, § § § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

American Employers' Insurance Company ("American") sued DynMcDermott Petroleum Operations Company ("DynMcDermott"), seeking a declaratory judgment that American is not obligated to pay DynMcDermott $215,439.68 plus interest. That amount is the unsatisfied balance of a judgment issued by a Louisiana federal district court in favor of DynMcDermott and against its contractor, Jon B. Crain & Associates, d/b/a/ Cav-Tech, Inc. ("Cav-Tech"). Cav-Tech was insured by American. DynMcDermott has counterclaimed for payment of $215,439.68 plus interest, arguing that American's insurance policy with Cav-Tech requires American to pay the judgment against its insured.

Cav-Tech worked as a contractor for DynMcDermott under a Master Service Agreement ("MSA"). The MSA stated that Cav-Tech would indemnify DynMcDermott against injuries or costs resulting from work by Cav-Tech or its subcontractors at DynMcDermott sites. Under the MSA, Cav-Tech agreed to procure insurance to support its indemnity obligation and to name

DynMcDermott as an additional insured. Cav-Tech obtained a Business Auto Policy from American to meet these obligations. (Docket Entry No. 21, Ex. D).

On June 3, 2003, DynMcDermott sued Cav-Tech in Louisiana to recover part of the workers' compensation benefits paid to an employee, Michael Cosio, who was injured while working on a Cav-Tech truck at a DynMcDermott site. The payments DynMcDermott sued to recover were less than the deductible of its workers' compensation insurance policy. The Louisiana court held that Cav-Tech's negligence caused Cosio's injuries; that DynMcDermott was free from fault; and that under the MSA, Cav-Tech was obligated to indemnify DynMcDermott for the workers' compensation payments. The Louisiana court entered a $228,499.91 judgment in DynMcDermott's favor, of which $13,060.13 has been paid. (*Id.*, Exs. A, B). In this suit, American has moved for summary judgment declaring that an exclusion in the Business Auto Policy it issued to Cav-Tech precludes coverage for the $215,439.68 balance Cav-Tech owes DynMcDermott under the Louisiana judgment. (Docket Entry No. 21). DynMcDermott has cross-moved for summary judgment that at least one of two exceptions to the exclusion apply to establish coverage. (Docket Entry No. 22). American has responded to DynMcDermott's cross-motion. (Docket Entry No. 23).

Based on the pleadings, the motions and response, and the applicable law, this court grants American's motion and denies DynMcDermott's motion, concluding that the terms of the Business Auto Policy between American and Cav-Tech do not require American to pay DynMcDermott the balance owing on the Louisiana judgment against Cav-Tech. The reasons are set out below.

**I.      Background**

      **A.      Cosio's Accident and Workers' Compensation Payments**

2

In the MSA Cav-Tech and DynMcDermott executed on January 23, 1998, Cav-Tech agreed to perform wireline services at several DynMcDermott sites in Texas and Louisiana. The MSA provided in relevant part as follows:

> [Cav-Tech] agrees to defend, indemnify and hold harmless [DynMcDermott] . . . against all causes of action, liabilities, including strict liability, claims, suits, judgments, liens, fines, penalties, damages, costs and attorney fees, for any loss whatsoever, resulting from or in connection with, any act or omission of [Cav-Tech] or its subcontractors, or their agents or employees, during the performance of the work under this subcontract, or any failure to perform this subcontract in accordance with its terms and conditions.

(Docket Entry No. 22 at 2). Cav-Tech purchased Business Auto Insurance Policy Number ARAK22441 from American to meet its indemnity obligations under the MSA. (Docket Entry No. 21, Ex. D). The Policy's effective dates were from December 8, 1998 to December 8, 1999. The Policy contained an endorsement stating that American would cover "all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from ownership[,] maintenance or use of a covered auto." (*Id.*, Ex. D at 18).

On June 8, 1999, Cav-Tech employees were working at a DynMcDermott facility in Winnie, Texas. Michael Cosio, a DynMcDermott employee, was injured falling from a collapsed step on one of Cav-Tech's trucks. (Docket Entry No. 22 at 3). DynMcDermott had a workers' compensation policy issued by Employers' Insurance of Wausau, with effective dates of April 1, 1999 to April 1, 2000. (Docket Entry No. 21, Exs. C, E). The Wausau Policy had a $250,000 deductible for each worker accident. Wausau ultimately paid $238,636.48 for the Cosio accident under that Policy. This sum included $218,537.87 in medical expenses for Cosio and $20,098.61 in Wausau's attorneys' fees and expenses incurred in the damages suit Cosio filed in Texas state

3

court against Cav-Tech and others seeking damages for his injuries. (Docket Entry No. 20 at 4). The total Wausau paid was less than the Policy deductible. (Docket Entry No. 21, Ex. C, Endorsement 24 ¶ E; Ex. E).

### B.     Cosio's Suit Against Cav-Tech for Damages

American provided Cav-Tech a defense in the Texas suit Cosio filed. In April 2002, Wausau intervened in that suit, asserting subrogation rights under § 417.001(b) of the Texas Labor Code to recover the workers' compensation benefits paid to Cosio. (*Id.*, Ex A at 11). DynMcDermott did not intervene in the Texas suit. That suit settled on July 17, 2002. The Memorandum of Settlement stated in part as follows:

> [Plaintiff] Michael W. Cosio agrees to settle any and all claims against D[efendants] Cav-Tech, Inc., SIE, Inc. a/k/a Computing USA, Inc., f/k/a S.I.E. Resource and S.I.E. Wireline Products, hereinafter S.I.E., for the total sum of $500,000.00 . . . .
>
> Of the Settlement sum, [defendant] Cav-Tech will pay $375,000.00 and "S.I.E." will pay $125,000.00 ($100,000 of which will be paid by Caston Bodies, Inc.).
>
> Of the total settlement sum of $500,000.00, Intervenor Employer's Assurance of Wausau will receive $115,000.00 in full satisfaction of its worker's compensation lien. Intervenor will also receive a holiday credit as to any future liability under Texas Labor Code 417, et seq.

(*Id.*, Ex. A at 12). On October 4, 2002, Wausau signed the following release as part of the settlement of the Texas suit:

> [Wausau,] on behalf of [its] executor, administrators, shareholders, proprietors, partners, principles, successors, parent corporations, subsidiaries, predecessors, assigns, heirs, affiliates, directors, servants, agents, employees, representatives, officers, insurers, guarantors, indemnitors, and any other party and/or entity claiming by, through or under Employer's Insurance Company of Wausau . . . do[es] hereby FOREVER RELEASE, ACQUIT, QUITCLAIM AND FOREVER DISCHARGE, CAV-TECH . . . as a result of the

4

> payment of workers' compensation benefits above described, and as a result of the incident above described, from any and all claims, demands, liens, charges, debts, judgments, costs, rights and causes of action of any type, kind or in character, statutory, equitable, contractual or at common law, for indemnity arising directly or indirectly from or by reason of the injuries or damages allegedly resulting to Michael W. Cosio from the incident . . . .
>
> It is the intention of this instrument to effect a FULL RELEASE of any and all subrogation claims against CAV-TECH . . . which we may have as the worker's compensation insurance carrier . . . .

(Docket Entry No. 22, Ex. A-5).

American paid Cav-Tech's portion of the settlement. (Docket Entry No. 20 at 5). Wausau paid DynMcDermott the $115,000 it had recovered in that settlement, as required under the Wausau workers' compensation insurance Policy issued to DynMcDermott. That Policy provided in part as follows:

> We have your rights and the rights of persons entitled to the benefits of this insurance to recover all advances and payments, including those within the deductible amount, from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.
>
> If we recover any advance or payment made under this policy from anyone liable for the injury, the amount we recover (after deducting from such recovery the expenses insured in effecting such recovery) will first be applied to any payments made by us in excess of the each accident and each employee deductible amounts . . . . The remainder of the recovery, if any, will be credited against the amounts paid or reimbursed by you under the deductibles . . . and the payments and reimbursements you have made toward exhausting these deductibles will be reduced by such credit.

(Docket Entry No. 21, Ex. C, Endorsement 24 ¶ E).

After the underlying suit settled, DynMcDermott demanded that Cav-Tech pay $103,537.87, the difference between the amount DynMcDermott paid for Cosio's injuries ($218,537.87), and the

5

amount Wausau paid DynMcDermott from the settlement ($115,000.00). DynMcDermott made the reimbursement demand under the indemnity provision of its MSA with Cav-Tech. Cav-Tech rejected DynMcDermott's demand. (Docket Entry No. 20 at 5).

### C.     DynMcDermott's Suit Against Cav-Tech for Contractual Indemnity

On June 3, 2003, DynMcDermott sued Cav-Tech in Louisiana state court. DynMcDermott sought a declaratory judgment that it was entitled to indemnity from Cav-Tech under the MSA for the amount paid for Cosio's injuries. On July 23, 2003, Cav-Tech removed the suit to the federal district court in the Eastern District of Louisiana and filed a third-party complaint against Wausau. *See* Notice of Removal, *DynMcDermott Petroleum Operations Co. v. Cav-Tech*, 2:03-cv-2095 (E.D. La. July 23, 2003); Answer and Third-Party Complaint, *DynMcDermott Petroleum Operations Co. v. Cav-Tech*, 2:03-cv-2095 (E.D. La. Aug. 20, 2003). Cav-Tech took the position that the release Wausau signed in settling the underlying lawsuit had extinguished DynMcDermott's right to recover the workers' compensation payments that were within the Wausau policy deductible. Cav-Tech alleged that Wausau had breached the settlement agreement by failing to obtain a release from DynMcDermott and by misrepresenting that DynMcDermott would not pursue any additional claims to recover payments made to Cosio.

The Louisiana case was tried to the court. On December 6, 2005, the Louisiana district court concluded that DynMcDermott was free from fault and that Cosio's accident was caused by Cav-Tech's negligence during the performance of work under the MSA. (Docket Entry No. 21, Ex. A). The court awarded DynMcDermott $228,499.91, which included $103,537.87 for partial reimbursement of the workers' compensation benefits, $20,098.62 for expenses and fees paid by Wausau in connection with Cosio's workers' compensation claim, $100,972.17 for attorneys' fees

6

and costs incurred by DynMcDermott in pursuing its claim against Cav-Tech, and costs and interest. (Docket Entry No. 20 at 6). The court dismissed the third-party claims against Wausau, concluding that the settlement agreement and release were "unambiguous, and contain[ed] no provision requiring [Wausau] to obtain a release of third party claims such as DynMcDermott's claim for contractual indemnification." (*Id.*, Ex. A at 15). The court also found that the settlement agreement and release did not preclude DynMcDermott from seeking indemnification under the MSA. The court stated:

> [T]he Release provides that it was based on a settlement of "any and all claims asserted by Employer's Insurance of Wausau," not DynMcDermott, and its stated intention was to release "any and all subrogation claims against CAV-TECH, INC. . . . which we may have as the workers' compensation insurance carrier." Cav-Tech could have, but did not, include DynMcDermott in the settlement, although it is clear that Cav-Tech knew of the outstanding contractual indemnification claim. The court finds that [Wausau] did not breach the terms of the Release.

(*Id.*). The court also concluded that "there [wa]s no evidence that [Wausau] made any promises or representations about whether DynMcDermott would pursue a claim for contractual indemnification against Cav-Tech." (*Id.*, Ex. A at 16).

DynMcDermott garnished a Cav-Tech bank account and obtained $13,060.13 toward the $228,499.91 judgment, leaving a balance of $215,439.68 plus interest. (Docket Entry No. 22 at 4 n.1). In August 2007, DynMcDermott submitted a written demand to American for the balance. DynMcDermott based its demand on the Business Auto Policy American issued to Cav-Tech. American refused to pay and filed this suit seeking a declaratory judgment that the Business Auto Policy does not cover DynMcDermott's judgment against Cav-Tech. (*Id.* at 6). DynMcDermott

7

cross-moved for summary judgment that at least one of the exceptions to an exclusion under the Business Auto Policy applies.

### D. The Exclusion in the American Business Auto Policy

The Business Auto Policy's relevant coverage provisions are as follows:

> A. Coverage
> We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership[,] maintenance or use of a covered auto. . . .
>
> B. Exclusions
> This insurance does not apply to the following:
> . . . .
>
> > 2. Contractual
> > Liability assumed under any contract or agreement.
> > But this exclusion does not apply to liability for damages:
> > > a. Assumed in a contract or agreement that is an insured contract; or
> > > b. That the insured would have in the absence of the contract or agreement.

(Docket Entry No. 21, Ex. D at 19). An "insured contract" is defined as:

> [t]hat part of your contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of bodily injury or property damage to a third person or organization, if the contract or agreement is made prior to the bodily injury or property damage. Tort liability means a liability that would be imposed by the law in the absence of any contract or agreement.

(*Id.*, Ex. D at 24).[1]

---

[1] The Business Auto Policy also names DynMcDermott as a "Blanket Additional Insured[ ] As Required by Specific Written Contract." (Docket Entry No. 21, Ex. D at 7). DynMcDermott does not seek coverage as an additional insured, probably because the Policy excludes coverage for bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured." (*Id.*, Ex. D at 19).

8

The parties agree that the Louisiana judgment is based on liability Cav-Tech assumed under the MSA. Because this is a contractual obligation, it triggers the Business Auto Policy exclusion. The parties disagree as to whether exceptions to the exclusion apply. American argues that the first exception, for "insured contracts," does not apply because the amount DynMcDermott paid for Cosio's injuries did not arise from DynMcDermott's tort liability – the Louisiana court specifically found that DynMcDermott was free from fault – but instead from DynMcDermott's obligation to pay workers' compensation benefits to its injured employee. DynMcDermott counters that the workers' compensation payments were required by the Texas workers' compensation statute and that the first exception to the exclusion applies. American argues that the second exception, for liability that Cav-Tech would have had "in the absence of the [MSA]," does not apply because "Cav-Tech's liability in the instant case is based solely on Cav-Tech's written agreement to indemnify DynMcDermott." (*Id.* at 17). DynMcDermott did not argue that the second exception applied.

## II.     The Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party

9

moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### B.    Insurance Contract Interpretation Under Texas Law

In interpreting an insurance policy, a court applies the rules for interpreting contracts, reading all parts of the policy together and exercising caution not to isolate particular sections or

provisions from the contract as a whole. *Provident Life & Accident Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citations omitted). Viewing the policy in its entirety allows a court to give effect to the written expression of the parties' intent. *Id.* (citing *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999)). In interpreting the policy, a court must read all parts of the policy together, giving meaning to each sentence, clause, and word, in order to avoid rendering any portion inoperative. *Id.* at 748. The parties' intent "is governed by what they said, not by what they intended to say but did not." *Id.* at 746.

A court construes an unambiguous policy as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). If a policy provision is uncertain or doubtful or is reasonably susceptible to more than one reasonable interpretation, it is ambiguous. *Id.; Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). An ambiguity does not arise simply because the parties offer opposing interpretations. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). A court determines whether a contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Parol evidence is not admissible for the purpose of creating an ambiguity. *See Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (Tex. 1951); *Lewis v. E. Tex. Fin. Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941). If a contract is determined to be ambiguous, then a court may consider extraneous evidence to ascertain its meaning. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The meaning of an ambiguous contract is a question of fact. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980).

An insurer relying on a policy exclusion bears the burden of showing that the exclusion is applicable. *Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 931 (Tex. App.–Dallas 2007, no pet.). "Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion." *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998); *Telepak v. United Auto Servs. Ass'n.*, 887 S.W.2d 506, 507 (Tex. Civ. App.–San Antonio 1994, writ denied).

### III.     Analysis

#### A.     Whether Cav-Tech's Liability to DynMcDermott Arises from its Assumption under the MSA of DynMcDermott's "Tort Liability" to Cosio

The Business Auto Policy excludes coverage for "[l]iability assumed under any contract or agreement." The first exception to this exclusion applies if the liability is "[a]ssumed in a contract or agreement that is an insured contract." (Docket Entry No. 21, Ex. D at 19). An "insured contract" is "that part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of bodily injury . . . to a third person." (*Id.*, Ex. D at 24). "Tort liability" is "a liability that would be imposed by the law in the absence of any contract or agreement." (*Id.*).

The first exception to the coverage exclusion applies if Cav-Tech's obligation to pay the Louisiana judgment arose from its assumption under the MSA of DynMcDermott's "tort liability" to Cosio. American argues that the first exception does not apply because DynMcDermott had no "tort liability" to Cosio. American points out that the Louisiana court concluded that DynMcDermott was "free from fault" in Cosio's accident, which the court found was caused by Cav-Tech's negligence. (*Id.* at 8–9). DynMcDermott argues that the workers' compensation payments it made to Cosio through Wausau were required by the Texas workers' compensation law

and were therefore "tort liability" under the Business Auto Policy definition of "liability that would be imposed by law in absence of a contract or agreement." American counters that because participation by employers in the Texas's workers' compensation system is voluntary, DynMcDermott's liability to Cosio was not imposed by law but instead by virtue of DynMcDermott's contractual participation in the Texas workers' compensation system through the Wausau Policy.

Participation in Texas's workers' compensation system is voluntary for private employers such as DynMcDermott and for their employees. TEX. LAB. CODE §§ 406.002, 406.034. A Texas employer has the option of participating in the workers' compensation system by opting in. *Id.* § 406.002. If the employer chooses not to participate, the employer may not assert common-law defenses against an employee in a negligence suit. *Id.* § 406.033. An employer that chooses to participate in the workers' compensation system must either procure workers' compensation insurance or self-insure to compensate employees, "without regard to fault or negligence," for "injur[ies] aris[ing] out of and in the course and scope of employment." *Id.* § 406.031(a)(2).

A participating employer has immunity from an employee's common-law claims for actual damages for injuries or death occurring during the course and scope of the employee's work responsibilities, except in the case of intentional torts by the employer. *Id.* § 408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . for the death of or a work-related injury sustained by the employee."); *Baker v. Cook Children's Physician Network*, No. 2-07-174, 2008 WL 553712, at *5 (Tex. App.–Fort Worth Feb. 28, 2008, pet. denied) ("[A]n employee who receives workers' compensation benefits may not bring suit for injuries caused by his employer's negligence or even

13

gross negligence" but may do so "for intentional torts."); *Medina v. Herrera*, 927 S.W.2d 597, 601 (Tex. 1996). The survivors of an employee killed because of an employer's gross negligence may not raise common-law claims for actual damages against the employer but may seek exemplary damages at common law. TEX. LAB. CODE § 408.001(b); 75 TEX. JUR. WORKERS' COMP. § 140 (3d ed. 2000); *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 87–88 (Tex. App.–Houston [1st Dist.] 1996), writ denied).

The Texas workers' compensation system is contractual in nature. The employer agrees to pay for employees' injuries, regardless of fault, in exchange for immunity from tort liability to its employees. When, as here, the employer obtains a workers' compensation insurance policy, the contract is one "involving three parties: the insurer, the employer, and the employee. Such a policy is primarily for the benefit of the employee, but it is also beneficial to the employer in that it relieves the employer from his or her common-law liability for damages arising out of injury to or death of all employees who have waived their rights of action and imposes that liability on the insurer." 75 TEX. JUR. WORKERS' COMP. § 79 (3d ed. 2000).

In the present case, DynMcDermott paid workers' compensation benefits to its employee, Cosio, through its workers' compensation carrier, Wausau. The Louisiana court held, and DynMcDermott does not dispute, that DynMcDermott played no role in causing Cosio's injury. There is no basis to conclude that absent DynMcDermott's contractual obligation to pay workers' compensation benefits to Cosio, DynMcDermott would have been liable to Cosio under statute or common law.[2]

---

[2] There is no evidence in the record suggesting that DynMcDermott could be held vicariously liable for Cav-Tech's negligence. Cav-Tech was an independent contractor. Under Texas law, employers are not vicariously liable for the actions of independent

14

The case of *QBE Insurance Corp. v. Industrial Corrosion Control, Inc.*, No. 1:07-cv-35, 2008 WL 1868431, at *2 (S.D. Miss. Apr. 24, 2008), involved similar facts. The plaintiff, Roy Anderson Construction ("RAC"), was a general contractor for a construction project. RAC had executed a subcontract with Industrial Corrosion Control, Inc. ("ICCI"). The subcontract was subject to an MSA that required ICCI to indemnify RAC for any injuries caused by ICCI or its subcontractors. One of ICCI's subcontractors negligently injured an RAC employee, and RAC paid workers' compensation benefits to that employee. There, as here, the court had already determined that the MSA required ICCI to indemnify RAC for workers' compensation payments made to the injured RAC employee. The issue was whether ICCI's business automotive insurer, QBE Insurance Corp., was required to reimburse the amounts paid under its commercial automobile policy with ICCI. *Id.* at *1. The commercial automobile policy contained a liability exclusion and exception virtually identical to those at issue in this case: "This insurance does not apply to . . . [l]iability assumed under any contract or agreement. But this exclusion does not apply to liability for damages [a]ssumed in a contract or agreement that is an 'insured contract.'" *Id.* at *2. An "insured contract" was defined as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." *Id.* The court concluded that the exception to the exclusion

---

contractors unless "the employer maintains detailed control over the independent contractor's acts or if the work itself involves a nondelegable duty, whether inherently dangerous or statutorily prescribed." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 795 (Tex. 2006). The parties have not argued, and the record provides no basis to establish, that any of these exceptions apply. The Louisiana district court specifically found that under the MSA, Cav-Tech retained control over its work. (Docket Entry No. 21, Ex. A at 10).

15

did not apply and that there was coverage for the indemnity obligation. Under Mississippi law, employers participating in the workers' compensation scheme were "immune from tort liability." *Id.* The court noted that "no party has ever asserted that RAC otherwise owes any tort liability for the accident that injured its employee." *Id.* The court concluded that "the indemnity agreement does not constitute an insured contract under the policy, such that the insured contract exception to the contractual liability exclusion does not apply." *Id.*

Another case reached a similar conclusion on similar facts. In *Forest Oil Corp. v. Ace Indemnity Insurance Co.*, No. Civ. A. 04-0435, 2004 WL 2347561, at *1 (E.D. La. Oct. 15, 2004), the court held that "[t]he contractual indemnity claim does not seek recovery of an assumed tort liability. The obligation owed to . . . the injured employee[ ] subsists under workers' compensation law, not tort law."

The Fifth Circuit used similar logic in *Certain London Market Insurance Companies v. Pennsylvania Mutual Casualty Insurance Company*, 106 F. App'x 884, 886 (5th Cir. 2004). The plaintiff in that case was the insurer for Kerr-McGee Corporation, which had hired Performance Fiberglass & Linings to perform rubber lining and fiberglass work at Kerr-McGee's electrolytic plant. The contract was governed by a Master Work Agreement ("MWA") that required Performance to indemnify Kerr-McGee for injuries arising from Performance's work under the MWA. *Id.* at 885. Two Performance employees were injured while relining a tank at Kerr-McGee's facilities because of Performance's negligence. The employees sued Kerr-McGee. Performance and its insurer refused to defend or indemnify Kerr-McGee in the underlying suit. Kerr-McGee and its insurer made the "business decision" to settle with the two Performance employees. *Id.* Kerr-McGee's insurer then sued Performance's insurer to recover the settlement amount. Performance's

16

insurance policy contained a liability exclusion and exception virtually identical to those at issue in this case. In concluding that Performance's insurance policy did not provide coverage, the Fifth Circuit observed that Kerr-McGee's insurer "has not established that Kerr-McGee would have any tort liability for Performance's negligence." *Id.* at 886.

American points to a similar analysis in *Alea London Ltd. v. Central Gulf Shipyard, L.L.C.*, No. Civ. A. 04-0389, 2006 WL 845752 (W.D. La. Mar. 30, 2006). In *Alea,* a subcontractor, Maxtec Inc., was working under an MSA to provide roustabout services for Central Gulf Shipyard, L.L.C., which in turn was working as a contractor under an MSA to provide shipyard services to Global Industries Offshore, L.L.C on Global Industries's vessel, the M/V AMBERJACK. The MSA between Maxtec and Central Gulf required Maxtec to defend and indemnify Central Gulf for any liability arising out of injuries caused to Maxtec employees in the course of their employment under the subcontract. One of Maxtec's employees was injured while working on the M/V AMBERJACK and sued Global Industries. Under its MSA with Global Industries, Central Gulf agreed to provide a defense and indemnity in the suit filed against Global Industries by the injured Maxtec employee. Central Gulf then sought indemnity from Maxtec under the terms of their MSA. Maxtec's insurer, Alea, sought a declaratory judgment that its commercial general liability policy with Maxtec did not require it to indemnify Central Gulf. The policy contained a liability exclusion and exception virtually identical to those at issue here. The court concluded that Alea was not required to indemnify Central Gulf, reasoning as follows: "[I]t is clear that the liability that Maxtec has assumed from Central Gulf is Central Gulf's contractual obligation to Global, i.e., contract-based, not tort-based . . . because Central Gulf would not have incurred that liability in the absence of its [MSA] with Global." *Id.* at *7.

17

DynMcDermott points to *Premiere Inc. v. Commercial Underwriters Inc.*, No. 02-3199, 2003 WL 21634953 (E.D. La. July 9, 2003), which involved facts similar to those in *Alea* but reached the opposite conclusion.  In *Premiere*, the court reasoned that because the insured subcontractor had agreed to indemnify the contractor for tort liability to the subcontractor's employees, the insured subcontractor had assumed the contractor's "indirect liability" for a tort caused by the vessel owner, whom the contractor was contractually obligated to indemnify.  The court concluded that the subcontractor was "liable indirectly for the same liability it contracted to assume directly under the [MSA]." *Id.* at *6.  The *Alea* court acknowledged and rejected the *Premiere* court's approach.  The *Alea* court found no basis in federal case law for the concept of "indirect tort liability."  2006 WL 845752, at *8.  In any event, the conflicting holdings in *Alea* and *Premiere* are not directly relevant to the present case.  The dispute in *Alea* and *Premiere* centered on whether an "insured contract," defined as "that part" of a contract "under which you assume the tort liability of another," could encompass the tort liability of "another" with whom the insured did not have a contract.  In the present case, by contrast, the "another" whose tort liability Cav-Tech agreed to assume is DynMcDermott, and DynMcDermott and Cav-Tech were parties to an MSA.  The issue in the present case is whether the nature of DynMcDermott's liability to Cosio – workers' compensation payments made because of DynMcDermott's voluntary participation in the workers' compensation scheme – qualifies as "tort liability."  Neither *Alea* nor *Premiere* address this issue.

The first exception to the exclusion in the Business Auto Policy does not apply here. As in *QBE* and *Forest Oil*, DynMcDermott's liability to Cosio arose from its agreement to provide workers' compensation benefits to its employees.  DynMcDermott had obtained insurance from Wausau to cover its workers' compensation payments, and the payments DynMcDermott made to

18

the employee were based on workers' compensation law, not tort liability. The record shows that DynMcDermott was not liable in tort to Cosio. The payments DynMcDermott made to Cosio would not have been required absent DynMcDermott's contractual obligations under the workers' compensation scheme. As a result, the contractual indemnity claim does not seek recovery of an assumed tort liability and the first exception to the exclusion is not satisfied.

### B.      Whether Cav-Tech Would Be Liable to DynMcDermott Absent the MSA

The second exception to the "[l]iability assumed under any contract or agreement" exclusion in the Business Auto Policy is for "liability for damages . . . [t]hat the insured would have in the absence of the contract or agreement." In this case, the second exception would result in coverage under the Business Auto Policy if Cav-Tech would be obligated to reimburse DynMcDermott's payments to Cosio absent the MSA.

American contends that the second exception "is clearly inapplicable because Cav-Tech's liability to DynMcDermott in the instant case is based solely on Cav-Tech's written agreement to indemnify DynMcDermott," and that "[i]f there existed no indemnity contract between Cav-Tech and DynMcDermott, Cav-Tech would have no potential liability for reimbursing DynMcDermott for the workers' compensation benefits it paid under its deductible in excess of Wausau's settlement of its worker's compensation subrogation lien." (Docket Entry No. 21 at 17). DynMcDermott has not submitted argument on the second exception. DynMcDermott has not identified any basis to conclude that absent the indemnity provision in the MSA, Cav-Tech would be liable to reimburse DynMcDermott for the workers' compensation benefits it paid to its employee, Cosio, under its deductible, in excess of Wausau's settlement of its workers' compensation subrogation lien.

The second exception to the exclusion in the Business Auto Policy does not apply.

**IV.     Conclusion**

American's motion for summary judgment is granted and DynMcDermott's cross-motion for summary judgment is denied. Final judgment for American is entered by separate order.

SIGNED on March 25, 2009, at Houston, Texas.

```
                            _____
                                    Lee H. Rosenthal
                              United States District Judge
```